UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBORAH A. HAGLER,      )
                     )
      Plaintiff,     )
                     )
    vs.           )     Case No. 4:12CV0328 ERW
                     )
TRUE MANUFACTURING, INC.,  )
                     )
      Defendant.   )


**MEMORANDUM AND ORDER**

     This matter is before the Court upon the Motion of Plaintiff Deborah A. Hagler

("Plaintiff") for Partial Summary Judgment [ECF No. 59]. Also before the Court is the Motion

of Defendant True Manufacturing Co., Inc. ("Defendant"), for Summary Judgment [ECF No.

61]. The matter is fully briefed and for the reasons that follow, the Court will deny both parties'

Motions.

     **I. BACKGROUND**[1]

     Plaintiff Deborah A. Hagler was hired by Defendant True on or about November 9, 1998,

as an assembly line worker in its factory in St. Charles County, Missouri. [ECF Nos. 27, at 2;30

at 1]. Plaintiff is an eligible employee within the meaning of the FMLA. *Id.* Plaintiff was

employed by Defendant Corporation for at least 12 months, and for at least 1,250 hours of

service during the previous 12-month period. *Id.* Furthermore, Defendant had more than 50

---

[1]The following facts are derived from the evidence submitted by the parties regarding
their Motions for Summary Judgment [ECF Nos. 59, 61]. Because this Memorandum addresses
*cross-motions* for summary judgment, the Court has attempted to set forth only undisputed facts.
In its substantive analysis, *infra,* the Court will recite additional pertinent facts, construing those
facts and all reasonable inferences most strongly in favor of Plaintiff on Defendant's Motion, and
vice versa.

employees at relevant times. [ECF No. 60-1, at 4]. Occasionally, Plaintiff requested and was granted a leave of absence, such as FMLA leave to be taken intermittently in April, 2005. [ECF No. 72, at 2].

On November 5, 2009, Plaintiff presented at the office of her doctor at ESSE Health complaining that she felt overwhelmed by stress caused by a job change and three "write ups" she had received at work. *Id.* at 5. Plaintiff's doctor at ESSE Health made a diagnosis of acute situational anxiety and prescribed antidepressant/anti-anxiety medication. *Id.* at 5. A few weeks later, Plaintiff missed work from Monday, January 18, through Friday, January 22, 2010.[2] *Id.* at 6. On Friday, January 22, 2010, Plaintiff and Defendant's Human Resources representative, Erin Turner, discussed the possibility of an FMLA protected leave of absence. *Id.* Erin Turner was Defendant True's FMLA administrator for factory employees. *Id.* Subsequently, on Monday, January 25, 2010, Plaintiff notified Defendant she did want to apply for an FMLA protected leave of absence. *Id.* at 7. Defendant then sent a seven page fax to Dr. Knapp and Nurse Perkins at ESSE Health, asking them to complete attached FMLA forms. *Id.* One of the forms was Defendant's FMLA Return to Work Certification Form, and the other was a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) form. *Id.*

On the following day, Tuesday, January 26, 2012, Plaintiff telephoned True and told Erin Turner she was out that day because of her depression and was going to the Doctor. *Id.* She was then seen at ESSE Health, and during the doctor visit, Plaintiff was crying and had difficulty

---

[2]On January 22, 2010, Plaintiff called in sick, indicating that she was throwing up and had diarrhea. [ECF No. 71, at 30]. Plaintiff's health care providers, Nurse Perkins and Dr. Knapp, later signed a Esse Health Work Release form, which stated that Plaintiff was unable to attend work from January 18 to January 25, 2010, listing that she was suffering from *gastroenteritis.* *Id.* at 31. (emphasis added).

concentrating. *Id.* at 8-9. At the conclusion of the January 26 visit, Plaintiff's diagnosis was sleep difficulties, depression and anxiety. *Id.* at 9. This same day, Nurse Practitioner Perkins completed and returned the FMLA "Return to Work Certification Form," indicating Plaintiff had been and would continue to be unable to work due to her depression and anxiety, from January 18, 2010, through January 31, 2010; but would be able to resume her full duties on February 1, 2010. [ECF Nos. 27, at ¶ 13; 30, at 2]. Nurse Perkins also filled in and returned the Certification of Health Care Provider Form. [ECF No. 72, at 10].[3] In response to question number 4 of this form, Nurse Perkins listed the following symptoms of Plaintiff's serious medical condition: mood lability; difficulty concentrating; and fatigue. *Id.* at 11. The form indicated that Plaintiff would be incapacitated for a continuous period of time, and also stated Plaintiff's estimated follow-up treatment schedule was "once a month," and her need for a part-time or reduced work schedule is eight hours per day, one day per month. [ECF No. 71, at 33-34]. Nurse Perkins also indicated that the condition will potentially cause episodic flare-ups periodically, preventing the employee from performing his/her job function. *Id.* at 34.

On January 29, 2010, True employee, Erin Turner, contacted Nurse Cindy Perkins by telephone [ECF No. 72, at 11]. Turner informed Nurse Perkins that she was confused because one certification form completed by Perkins did not discuss Plaintiff reported complaints, which were that she was sick, throwing up and had diarrhea.[4] *Id.* at 12. Nurse Perkins confirmed to Erin Turner that Plaintiff did have all of those gastrointestinal symptoms but, that Plaintiff was suffering from depression, and it was Perkin's understanding Plaintiff wanted FMLA leave for

_____

[3]Nurse Perkins submitted an original Certification of Health Care Provider Form to True on January 26, 2010, and a revised Certification of Health Care Provider Form to True on January 29, 2010. [ECF No. 72, at 10, 14].

[4]See Footnote 2, *supra*.

this reason. *Id.* at 13. Nurse Perkins told Erin Turner that Plaintiff was not able to return to work on January 26 because of her depression, and would remain off work through January 31 because of depression. *Id.* Furthermore, also on January 29, 2010, Defendant also sent a fax to ESSE Health, requesting confirmation of the beginning and ending dates of Plaintiff's incapacitation - which had *not* been filled in on the January 26, 2010, Certification of Health Care Provider Form as originally submitted by Nurse Perkins. [ECF No. 60-2, at 5]. Nurse Perkins completed the form as requested, stating that ESSE Health estimated Plaintiff would be incapacitated from January 26, 2010, through January 31, 2010. *Id.*

Although expected to resume full duties on February 1, 2010, Plaintiff called in sick that day. [ECF No. 72, at 15]. When she called in, Plaintiff notified True she needed to continue her FMLA protected leave. *Id.* Plaintiff reported for work the next day, on February 2, 2010. *Id.* This was the only day she reported for work between January 18 and February 23, 2010. [ECF No. 71, at 20]. While she was at True that day, Plaintiff was reprimanded for talking to the person training her about issues unrelated to her training. [ECF No. 72, at 16]. Plaintiff continued to miss work after February 2, and had a doctor's visit on February 11, 2010. *Id.* at 19. The plan of therapy prescribed by Dr. Knapp and Nurse Perkins at the end of this February 11, 2010 visit, was use a different sedative to help with Plaintiff's sleeping problems and her anxiety, and for Plaintiff to stay off work *until February 23, 2010. Id.* at 19-20. An ESSE Health form was completed and signed by Dr. Knapp to verify that Plaintiff had been examined on February 11, 2010, and was unable to work from February 3 through February 22, 2010 due to a serious health condition. This form referenced the FMLA, but provided *no diagnosis or specific reason* for Plaintiff's inability to work on those days, nor did it indicate she had any sleeping problems. *Id.* at 21; [ ECF No. 71, at 40].

On February 17, 2010, six days after her appointment at ESSE, Plaintiff called in to work and spoke with True's director of Human Resources, Mary Gregory. [ECF No. 72, at 23]. Plaintiff told Gregory she was having trouble sleeping and had been given medication, including Lorazepam. *Id.* Plaintiff also told Gregory that, when she had called in previously, she had reported to Defendant that she was out due to FMLA. *Id.* Defendant was *not* aware of the doctor's visit or note of February 11, 2010, until this February 17, 2010 phone call with Gregory. *Id.* at 24. At the conclusion of their February 17, 2010 phone call, Mary Gregory asked Plaintiff to come into the True office to sign papers, and to bring the February 11, 2010 doctor's note. *Id.*

Then, on the same day, February 17, 2010, in anticipation of the meeting with Plaintiff, Defendant generated two documents: one was a request for FMLA leave of absence for the period January 26 until February 2, 2010; and the other was an additional request for FMLA leave of absence for the period February 4 until February 23, 2010. *Id.* at 25. Each of the two forms indicated that FMLA leave was requested due to a serious health condition which makes Plaintiff unable to perform the essential functions of her job. *Id.* The request for FMLA leave form covering the period January 26 until February 2, 2010 was described as leave for a "single block of time" while the form for the period February 4 until February 23, 2010 was described as leave to be taken "**intermittently**."[5] *Id.* Members of True's human resources staff, who manage FMLA leave, determine whether an employee's leave is for a single bock of time, or intermittent, based on information from the employee and their doctor. [ECF No. 71, at ¶ 15]. Defendant decided the leave for February 3 through February 22, 2010, would be intermittent leave, rather than for a single block of time. [ECF No. 72, at 26].

---

[5]When True prepared the FMLA request form on February 17, 2010, to cover the FMLA leave from February 4, 2010 until February 23, 2010, the reason for Plaintiff's leave was listed by Defendant as "Not sleeping per Deborah, awaiting certification form." *Id.* at 29.

In February, 2010, the request for FMLA leave form signed by Plaintiff, described a significant difference between intermittent leave, and leave for a block of time. The form indicated that True employees on approved or conditionally approved FMLA leave for a single block of time did not have to call in each day to report their absence. *Id.* However, employees on an intermittent leave of any nature were required to call in every day they were absent, and give the specific reason as to why they were absent, so that Defendant True would know how to credit that absence toward the FMLA leave, and also, so Defendant would know not to expect that employee to come to work that day. *Id.* The request for FMLA leave form further states that, failure to call in an intermittent absence, will result in the absence not qualifying for intermittent leave and being considered time missed for attendance purposes. [ECF No. 71, at 43]. Defendant concedes that its request for FMLA leave form was modified on February 17, 2010, for the *first time*, *specifically for Plaintiff*, to include additional language regarding the need to call in to report every day of an intermittent leave of absence.[6] [ECF No. 72, at 26-27].

When Plaintiff came in to True as requested by Defendant, on February 18, she signed the request for leave forms. [ECF No. 71, at 43]. Furthermore, True employees, Nelson and Turner, specifically instructed Plaintiff that she was now on intermittent leave, and that employees on intermittent leave, like other absent employees, must call in each day of absence and notify True of the reason for absence. *Id.* at 45.[7] Additionally, at the meeting, Erin Turner read through the

---

[6]Defendant does not dispute Plaintiff's contention, but clarifies that the statement is incorrect to the extent that it may suggest that this rule applied only to Plaintiff. [ECF No. 72, at 27].

[7]As Plaintiff does not specifically controvert Defendant's assertion in its Statement of Maerial Facts, it will be deemed admitted for purposes of summary judgment. See Local Rule 7-4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."). Plaintiff does recall that, at the February 18, 2010 meeting, "somebody said she should call in

request for FMLA leave of absence form paragraph by paragraph, making sure Plaintiff

understood it and had no questions.[8]  *Id.*  Turner also marked an asterisk beside paragraph 18 of

this form to emphasize the absence-reporting requirement.  *Id.*  It is further undisputed that by the

end of the meeting on February 18, True knew that Plaintiff was not coming in February 19, or

February 22, 2010; Plaintiff so informed them, and she provided Dr. Knapp's February 11 note.

[ECF No. 72 at 27].  Plaintiff subsequently did not call in on Friday, February 19, 2010, or on

Monday, February 22, 2010, to notify True that she would be absent.[9]  *Id.* at 29.  True's written

Attendance Reporting Policy requires that employees report absences to the O'Fallon office (not

their individual supervisors) between 7:00 a.m. and 3:30 p.m.  [ECF No. 71, at 3].  This policy

further provides: "Employees who fail to call in and report their absence for two (2) consecutive

days between 7:00 a.m. and 3:30 p.m. will be terminated from employment for job

abandonment."  *Id.*  The only exception to this job abandonment policy is for employees on

approved FMLA leave for a *continuous period of time*.  *Id.* at 5.  True requires all other

employees, including those on FMLA leave on an *intermittent* basis, to follow the daily call-in

policy for all absences.[10]  *Id.*  True reviews its Attendance Reporting Policy, including the daily

call-in requirement, with all new employees during orientation and posts it on bulletin boards

throughout the factory.  *Id.* at 6.  Defendant True terminated Plaintiff's employment at the end of

every day."  [ECF No. 71, at 7].

[8]As Plaintiff does not specifically controvert Defendant's factual assertion, it will be deemed admitted for purposes of summary judgment.  Note, however, that Plaintiff contends in her deposition, that she was "out of it" during the meeting. [ECF No. 71-1, at 9-10].

[9]Plaintiff also failed to report absences on February 3, 5, and 12 of 2010.  [ECF No. 71, at 19].

[10]Plaintiff notes that this policy is not *now* in effect [as it was changed in October 2011], and disputes [even though not asserted by Defendant as a material fact in ECF No. 71, at ¶ 3] that the policy is uniformly followed by True.  [ECF No. 71, at 5].

the shift on February 22, 2010, for not calling in on Friday, February 19 or Monday, February 22, 2010. [ECF No. 72 at 29]. The only reason Plaintiff was fired was the failure to call in on February 19, 2010 and February 22, 2010. *Id.* Plaintiff told Defendant that the reason she did not call in on February 19, 2010, was because she was asleep all day and could not get up. [ECF No. 71, at 48]. Plaintiff states that it is likely she did not call in on February 22, 2010, as she forgot and thought she had *three* days under True's call-in rule. *Id.* at 49, 53.

On April 22, 2011, the United States Department of Labor, Wage and Hour Division issued a narrative report finding that Defendant True Manufacturing violated the FMLA in several respects because the leave of absence for the period February 4, 2010 through February 22, 2010, was designated as a leave to be taken "intermittently," and then firing Deborah Hagler because she did not call in to give additional notice of her absence on February 19 and February 22, 2010.[11] [ECF No. 72, at 31]. True's policy of requiring a telephone call every day of intermittent FMLA leave was amended in October 2011.[12] *Id.* at 32.

Plaintiff filed her Complaint in the Circuit Court of St. Charles County, Missouri, and Defendant removed to this court. [ECF Nos. 1, 5]. In her First Amended Complaint, Plaintiff

---

[11]Defendant disputes the characterization of the Department of Labor's findings as a Report, instead deeming it a "preliminary investigative report." [ECF No. 72, at 31]. The parties provide lengthy arguments as to whether the findings of the Department of Labor ("DOL") are material or admissible. As indicated in the "Discussion" section of this memorandum, the Court finds a grant of the parties' instant Motions inappropriate as there are genuine issues of material fact precluding summary judgment. As such, the court need not address the admissibility of the DOL's findings at this time.

[12]Defendant does not dispute the policy change, but limits its applicability to pre-scheduled intermittent FMLA leave. [ECF No. 27, at 32]. Defendant argues that this subsequent change in its FMLA policy is inadmissible. As noted in Footnote 11, in the "Discussion" section of this memorandum, the Court finds a grant of the parties' instant Motions inappropriate as there are genuine issues of material fact precluding summary judgment. As such, the court need not address the admissibility of the subsequent policy change at this time.

alleges that Defendant violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601,

*et seq.* [ECF No. 27].  Plaintiff contends, under her Counts I and II, that Defendant violated the

FMLA by designating her leave as intermittent, by adopting and enforcing a more stringent

notification standard than the FMLA requires, by terminating her before her return to work date

of February 23, 2010, and by terminating her employment in retaliation for her attempting to

exercise her rights under the FMLA.  *Id.* at 10-13.  As noted above, Plaintiff has filed a Motion

for Partial Summary Judgment [ECF No. 59] as to Defendant's liability on a limited theory of

Count I of the Complaint.  Defendant True also files a Motion for Summary Judgment,

contending that it is entitled to judgment as a matter of law on Counts I and II of the Complaint.

In accordance with Local Rule 7-4.01, both parties have filed Statements of Uncontroverted

Material Facts, and the matter is fully briefed and ready for disposition.[13]

## II.  LEGAL STANDARD

Motions for summary judgment essentially "define disputed facts and issues and ...

dispose of unmeritorious claims [or defenses]."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544

---

[13]In her Response to Defendant's Statement of Material Facts [ECF No. 71], Plaintiff motions the Court to strike Defendant's listing of Material Facts as it is not in compliance with Fed. R. Civ. P. 56 in general, and the Local Rules of this Court, E.D. Mo. L.R. 401(E), in particular.  Plaintiff alleges that the 100 statements of fact are lengthy narratives discussing events with additional conclusions and opinions.  Plaintiff contends that Local Rule 7-4.01 requires the moving party to set forth a "separately numbered paragraph for *each fact.*"  The Court agrees that Defendant's statement of facts include lengthy paragraphs comprised of numerous facts, as well as opinions and inferences.  However, additionally, upon review of Plaintiff's responses, the Court likewise notes that Plaintiff, in disputing some of Defendant's contentions, often controverts allegations, testimony or evidence not even referenced by Defendant in the fact at issue.  For example, pertaining to Fact 25, Defendant states that Plaintiff received ten verbal and six written warnings for attendance - and, in response, Plaintiff lists as a disputed fact that Plaintiff was not discharged because of absenteeism.  *See* [ECF No. 71, ¶ 25]. Plaintiff appears to respond to a perceived inference from the Defendant's listed fact, as opposed to the fact itself.  Although both parties fail to comply with the directives and spirit of the Local Rule, the Court will nevertheless attempt to parse through the lengthy statements and responses for purposes of the cross-motions for summary judgment.

(2007); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. Fed. R. Civ. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp.2d 893, 903 (N.D. Iowa 2009). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it " 'might affect the outcome of the suit under the governing law.' " *Johnson v. Crooks,* 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson,* 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)), or when "

'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods,* 409

F.3d at 990 (quoting *Anderson,* 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus.,*

*Inc.,* 418 F.3d 820, 832 (8th Cir.2005) (stating genuineness depends on "whether a reasonable

jury could return a verdict for the non-moving party based on the evidence"). Evidence presented

by the nonmoving party that only provides "some metaphysical doubt as to the material facts,"

*Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, such as a "scintilla of evidence," *Anderson,* 477

U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,* 113 F.3d 1484,

1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Id.*

at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute

between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004).

""""Instead, "the dispute must be outcome determinative under prevailing law." ' " *Mosley v. City*

*of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman,*

969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman,* 884 F.2d 365, 366 (8th

Cir. 1989)).  In other words, a genuine issue of material fact requires "sufficient evidence

supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties'

differing versions of the truth at trial." *Anderson,* 477 U.S. at 248-49.  Essentially, a genuine

issue of material fact determination, and thus the availability of summary judgment, is a

determination of "whether a proper jury question [is] presented." *Id.* at 249.  A proper jury

question is present if "there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or

other similar materials *negating* the opponent's claim," *Celotex,* 477 U.S. at 323, but the moving

party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex,* 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Mosley,* 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 322; *In re Temporomandibular Joint,* 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present, the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587-88; *Mosley,* 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita,* 475 U.S. at 587-88, 106 S.Ct. 1348. However, "because we view the facts in the light most favorable to the nonmoving party, we do

not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.,* 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter ... the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway,* 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("[T]he inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter,* 157 F.3d 537, 539 (8th Cir.1998) (" 'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.' " (quoting *Hartnagel,* 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. Fed. R. Civ. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgment is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1315 (8th Cir. 1996).

### III. DISCUSSION

### A. The Family Medical Leave Act

The FMLA establishes a right to unpaid family and medical leave for employees. *See* 29 U.S.C. § 2612. Specifically, "[t]he FMLA provides eligible employees up to 12 work-weeks of unpaid leave during any 12-month period" for qualifying medical reasons. *Darby v. Bratch,* 287 F.3d 673, 679 (8th Cir. 2002) (citing 29 U.S.C. § 2612). "Employers covered by FMLA are required to grant leave to eligible employees . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the employee's job (see §§ 825.113 and 825.123)[.]" 29 CFR § 825.112. The Act balances the interests of both employees and employers: it protects an employees' right to at least twelve weeks of unpaid leave for compelling medical reasons, and it protects employers from being required to extend leave to employees that have not yet worked a minimum of twelve months. *See Fleece v. BFS Diversified, LLC.,* 618 F.Supp.2d 929, 934 (S.D. Ind .2008) ("The language of the FMLA and its legislative history show that the twelve month and 1,250 hour requirements for eligibility were a critical part of the legislative compromise between the interests of employees and employers.").

An employee can make two types of FMLA claims. In an interference claim, "the employee alleges that an employer denied or interfered with his substantive rights under the FMLA," and in a retaliation claim "the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quoting *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050 (8th Cir. 2006)).[14] Plaintiff raises both claims against Defendant. In her Motion for Partial Summary Judgment, under a limited theory of liability as to Count I, Plaintiff contends that there is no genuine dispute as to the material facts establishing that Defendant interfered with Plaintiff's rights under the FMLA by

---

[14]The Eighth Circuit recently reaffirmed its jurisprudence with regards to the differences between FMLA interference and retaliation claims in *Lovland v. Employers Mutual Casualty Co.,* 674 F.3d 806, 812 (8th Cir. 2012).

unilaterally designating her conditionally approved FMLA leave as intermittent.  Defendant

motions the Court to grant summary judgment on Counts I and II, arguing that it is entitled to

judgment as a matter of law on Plaintiff's interference and retaliation claims.

### B.  FMLA Interference Claim

Both parties have moved for summary judgment as to Plaintiff's claim that Defendant

interfered with her FMLA rights.[15]  Under the FMLA, an employer may not "interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right" under the act.  29 U.S.C. §

2615(a)(1).  Interference includes "not only refusing to authorize FMLA leave, but discouraging

an employee from using such leave.  It would also include manipulation by a covered employer

to avoid responsibilities under FMLA."  29 C.F.R. § 825.220(b).  "In an interference claim, an

employee must show only that he or she was entitled to the benefit denied."  *Stallings v.*

*Hussmann Corp.,* 447 F.3d 1041, 1050 (8th Cir. 2006) (quotation omitted).  "An employee can

prevail under an interference theory if he was denied substantive rights under the FMLA for a

reason connected with his FMLA leave."  *Id.* (internal citation omitted).

This court has recognized that an employee can prove interference with an FMLA right

regardless of the employer's intent.  *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d

972, 979 (8th Cir. 2005).  However, the mere fact of discharge *during* FMLA leave by no means

demands an employer be held strictly liable for violating the FMLA's prohibition of interfering

with an employee's FMLA rights."  *Id.* at 980 (emphasis added).  Thus, where an employer's

reason for dismissal is insufficiently related to FMLA leave, the reason will not support the

---

[15]Plaintiff moves the Court for partial summary judgment as to Defendant's liability on a limited theory of the Count I interference claim. [ECF No. 60, at 3].  Plaintiff does not abandon the other allegations of interference set out in Count I or her retaliation claims set out in Count II. *Id.* at 6.

employee's recovery.  *Id.* at 979 (holding that strict liability does not apply to an 29 U.S.C. § 2615(a)(1) claim).  *Stallings*, 447 F.3d at 1051; *Chappell v. Bilco Co.*, 675 F.3d 1110, 1115 - 1116 (8th Cir. 2012); *Thompson v. CenturyTel of Central Ark., LLC*, 403 Fed. Appx. 114, 117-118, (8th Cir. 2010) (citing *Bacon v. Hennepin County Med. Ctr.* , 550 F.3d 711, 715 (8th Cir. 2008)) ( "an employer is not liable for an interference claim if the employer can prove it would have discharged the employee even if the employee had not exercised her FMLA rights").  In other words, under the FMLA , "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."  *Throneberry*, 403 F.3d at 977.  Finally, the employee has the burden of proving an impairment of his rights and the resulting prejudice of the employer's interference.  *See Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 86 (2002).

### 1.  Plaintiff's Motion for Partial Summary Judgment - Count I

In her Motion for Partial Summary Judgment, Plaintiff claims Defendant interfered with her rights under the FMLA by unilaterally mischaracterizing her leave as "intermittent" instead of as leave to be taken for a "single block of time."  According to Plaintiff, her supervisors at True decided to designate her FMLA leave of absence for the period February 4, 2010, through February 22, 2010 ("February Leave"), as a leave of absence to be taken "intermittently," even though it was clear to Plaintiff, her doctor, and those supervisors that she would be on leave of absence pursuant to her doctor's orders every day for that single block of time.  [ECF No. 60, at 1-2].  Plaintiff argues that the classification made by Defendant on February 18 interfered with her medical leave thereafter.  *Id.* at 2.  Because her FMLA leave was designated intermittent, Plaintiff contends Defendant required her to telephone each day and repeat what it already knew:

that she was not coming into work on February 19 and 22, 2010. *Id.* Because Plaintiff did not

call in to report her absence on those two days, she was fired at the end of her shift on February

22, 2010. *Id.* Plaintiff argues that if that leave had been properly recognized as single block of

time, or if True had not enforced an unnecessary call in policy, she would not have been fired.

*Id.*

In support of her Motion, Plaintiff argues that the FMLA and Defendant's own policies

mandated regular FMLA leave, not intermittent leave.[16] *Id.* at 4. According to True's own

policy, Plaintiff maintains that the leave from February 4, 2010, through February 22, 2010,

should have been characterized instead as a single block of time, as it was a *continuation* of the

FMLA leave taken from January 26, 2010, through January 31, 2010, which was characterized as

a single block of time. Plaintiff cites to Defendant's request for FMLA leave form, which states

that, "A leave of absence commencing within 60 days of the end of a previous leave *for the same*

*reason* is considered a continuation of the earlier leave for purposes of this policy."[17] [ECF No.

60, at 10; 60-5, at 20, ¶ 16]. Plaintiff also contends that under the FMLA, intermittent leave is

available only when an employee is *able to work* when not receiving treatment or experiencing

an acute problem. 251 F.3d 670, 677 (8th Cir. 2001) (emphasis added). In support of this

_____

[16]Plaintiff argues under the Ninth Circuit case, *Xin Liu v. Amway Corp.,* 347 F.3d 1125 (9th Cir. 2003), that an employer such as True, violates the FMLA by improperly designating employee's leave. However, in *Xin Liu*, the employer interfered with the employee's FMLA rights by mischaracterizing plaintiff's FMLA leave as *discretionary personal* leave, thus denying the employee the benefit he was entitled to receive under the FMLA. *Id.* at 1135 (emphasis added). Defendant argues that the Plaintiff misapplies the holding in *Xin Liu*. [ECF No. 77, at 3]. Unlike *Xin Liu*, which involved a total denial of FMLA leave to the employee, here, the alleged improper designation involves the characterization of leave as intermittent versus single block of time, both forms of leave under the FMLA.

[17]Defendant maintains, as explained *infra*, that it was unclear that Plaintiff's February leave was for *same reason* as the January leave, based on information received by Defendant.

17

proposition, Plaintiff cites to *Hatchett v. Philander Smith College*, in which the court found that an employee who could not otherwise perform the essential functions of her job, apart from the inability to work a full-time schedule, is not entitled to intermittent or reduced schedule leave. 251 F.3d 670, 676 (8th Cir. 2001). Here, as Plaintiff's doctor determined she was *unable* to work due to her acute problem through February 22, 2010, Plaintiff urges that the leave should not be characterized as intermittent. Plaintiff, however, does not cite to FMLA regulations to support this argument, and her reliance on *Hatchett* is misplaced. *Hatchett* involves an employee whose request for reduced-schedule leave was denied by the employer. The court observed that even if the employee worked less hours on reduced-schedule leave, she still would have been unable to perform the essential functions of her business manager position. *See Hatchett*, 251 F.3d at 676. As such, the Court does not find Plaintiff's argument persuasive.

Plaintiff further argues that she is entitled to summary judgment as Defendant mischaracterized her leave as intermittent when Defendant must have understood that her FMLA leave for depression, which was to have ended January 31, 2010, needed to be extended when Plaintiff could not bring herself to come into work on February, 1, 2010, and did not report for work for several days after. [ECF No. 60, at 9]. Plaintiff maintains that Defendant's designation of intermittent leave was improper as she provided clear notice that she needed to be on FMLA leave for a block of time until February 23, 2010. *Id.* Plaintiff asserts that she notified Defendant at least three times before she was presented with the FMLA request for leave form on February 18, 2010. *Id.* First, Plaintiff states that on February 1, 2010, when she called in to report her absence, Plaintiff told Defendant she needed to continue her FMLA leave. *Id.* Plaintiff also alleges that she informed human resources director, Mary Gregory, on February 17, 2010, that she had been told by her physician that she needed to be off of work until at least

February 23, 2010 for a serious medical condition.  *Id.* at 10.  Finally, on February 18, 2010, when she was at True, meeting with Ashley Lang and Erin Turner, Plaintiff contends that she again told them that she needed to be off work because of a serious medical condition, and specifically said she would not work the next day, Friday, February 19, 2010, or Monday, February 22, 2010.  *Id.*  At that same meeting, Plaintiff handed over the note from Dr. Knapp certifying that she needed to be off work for a serious medical condition through February 22, 2010.  *Id.*[18]

Defendant, in response to Plaintiff's Motion for Summary Judgment, argues that *True,* not Plaintiff, is entitled to judgment as a matter of law on Count I, because in so classifying Hagler's FMLA leave, True protected Hagler's FMLA rights, rather than interfering with them, and because True's enforcement of its uniformly-enforced attendance policy requiring employees to call in daily to report absences was lawful under the FMLA.  [ECF No. 77, at 1-2].  Defendant contends that the FMLA did not obligate True to classify Plaintiff's leave as being for a single block of time rather than intermittent**.**  [ECF No. 77, at 2].

Defendant argues that the undisputed facts do not support a reasonable inference or conclusion that True knew or should have known Plaintiff's February leave was *not* intermittent in nature.  [ECF No. 77, at 6].  Defendant notes that Plaintiff's healthcare providers had given two different reasons for her prior January absences (gastroenteritis and anxiety/depression) and had later given various other descriptions for her condition (mood lability, difficulty

---

[18]Plaintiff alternately argues that her February leave could have received some sort of hybrid label such as "intermittent for a continuous/consecutive block of time," similar to the treatment of her leave of absence in 2005.  [ECF No. 81, at 4].  In 2005, Plaintiff was granted FMLA leave to care for her mother after her hip surgery.  On Plaintiff's 2005 request for leave of absence form, the type of leave designated was both a block of time, and intermittent leave.  *See* [ECF No. 60-7, at 3].

concentrating, fatigue), while Plaintiff herself had given no explanation, incomplete explanations, and a cornucopia of differing reasons for her absences in late January and early February (doctor's request, "not feeling well," vomiting and diarrhea, depression, in bed all day, forgot to call, overslept, hadn't slept in days, "nerves," and "couldn't get it together"). [ECF No. 77, at 6]; [ECF No. 71, at ¶¶ 32, 42, 44-49]; [ECF No. 62-5, at 14-17]. Defendant also argues that Nurse Perkins' clear designation of this leave as requiring intermittent absences in the future, and Hagler's own admission that she couldn't predict in advance when she would have days on which she just couldn't go to work, also support characterization as intermittent. [ECF No. 77, at 7]. Thus, in dispute of Plaintiff's contention that Defendant should have understood that her February leave constituted a continuation of her January leave for depression, and that Plaintiff provided clear notice that a block of time was needed, Defendant states that it was confused and uncertain as to Plaintiff's condition. [ECF No. 77, at 6].

Plaintiff counters that if True was indeed confused or uncertain regarding her exact diagnosis, its remedy was to contact the doctor's office for clarification, just as it had done in January when True employee, Erin Turner, spoke with Nurse Perkins. [ECF No. 81, at 8]. Plaintiff then cites to the FMLA, which states, "When an employee has been previously certified for leave due to more than one FMLA-qualifying reason, the employer may need to inquire further to determine for which qualifying reason the leave is needed . . ." *Id.* (citing 29 C.F.R. § 825.302(c)).

As noted s*upra*, Plaintiff contends that Defendant's decision to classify her leave as intermittent interfered with her right to a certain type of FMLA leave, leading to her being subjected to a call-in policy, and terminated for failure to comply. According to the FMLA, intermittent leave is leave taken in separate blocks of time due to a single illness or injury, rather

than one continuous period and may include leave of periods from one hour or more to *several weeks*. *See* 29 C.F.R. § 825.202(b)(1).[19]  Also, the "employers decision to designate leave as FMLA - must be based on information received from the employee."  29 C.F.R. § 825.302(a).

The Court does find that Plaintiff makes a convincing argument that the information she provided to Defendant regarding her February leave, supported a determination that it constituted a single block of time.  Classification as a single block seems appropriate, considering that her January leave was granted as a block of time, and that the doctor's note she presented to Defendant indicated that Plaintiff was unable to work from February 3, through February 22, 2010.  However, the Court must give Defendant the benefit of all reasonable inferences.  Here, Defendant has presented evidence of confusion over Plaintiff's condition based upon the multiple reasons given by Plaintiff and her health providers as to her absences.  Thus, there is a genuine issue of material fact as to whether Plaintiff's condition in February constituted a continuation of her prior leave, and whether Plaintiff's absences related to the same FMLA qualifying reason as she alleges.[20]

Plaintiff additionally argues in her Reply that, '[i]f  True cannot create some factual and legal support for calling more than two weeks of continuous absences intermittent it cannot avoid summary judgment."  [ECF No. 81, at 3].  The Court, upon reviewing the evidence submitted by

---

[19]"Intermittent leave may be taken . . . for the employee's own serious health condition, . . . which requires treatment by a health care provider periodically, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks."  29 CFR § 825.202(b)(1)

[20]Furthermore, the Court cannot say, making all reasonable inferences in favor of Defendant, that True violated its own policy, which considers a leave commencing within 60 days of the end of a previous leave for *the same reason*, a continuation of the earlier leave.  Here Defendant has offered evidence of its confusion over whether Plaintiff's absences in February were for *the same reason* as her absences in January.

the parties, observes that in 2005, Plaintiff similarly was absent for several weeks (from May 2 through May 6, 2005, and from May 16 through May 31, 2005).  *See* [ECF No. 62-5, at 4].  According to Plaintiff, these blocks *were* designated intermittent by Defendant although they involved lengthy and consecutive absences.  [ECF No. 81, at 4 n.3].  This seems to provide the factual basis requested by Plaintiff in her Reply.  Construing the facts in a light most favorable to Defendant, it could have also anticipated future intermittent absences beyond February 22, 2010, as Nurse Perkins indicated on the January 29, 2010 Certification of Health Care Provider form that Plaintiff would have periodic flare-ups requiring her absences.  *See* ECF No. 60-4, at 23.  Moreover, Defendant contends that as it anticipated future intermittent absences by Plaintiff, it was trying to protect her by designating her leave as intermittent, especially as she was on an existing attendance warning.

The Court also considers Plaintiff's argument that, even if Defendant was confused over her diagnosis, Defendant still ran afoul of the FMLA regulations, as under 29 C.F.R. § 825.302(c), Defendant should have inquired further to determine for which qualifying reason the February leave was taken, in light of her previous January leave.  The Court, however, notes that Defendant *conditionally* granted Plaintiff's February 4 through 22, 2010 leave, pending certification from her health provider.  Therefore, Defendant was anticipating more information regarding the nature of Plaintiff's need for leave upon certification, and Plaintiff was conditionally granted one type of FMLA leave until that time.  Furthermore, regulation 825.302(c), cited by Plaintiff, does not appear to the Court to be aimed at the mischaracterization of leave as intermittent or single block, but at preventing an employee from being denied FMLA leave altogether because the employer failed to further inquire about her medical condition, even though the employee had a previously certified leave under the FMLA.

Overall, considering Plaintiff's several arguments, the Court cannot say as a matter of law, viewing the facts in a light most favorable to Defendant, that no genuine issue of material fact exists with regard to the improper classification of Plaintiff's leave, and, therefore, summary judgment is not proper as to Plaintiff's claim of interference based on Defendant's alleged unilateral designation of Plaintiff's leave as intermittent.

The second argument Plaintiff makes to establish interference, is that Defendant enforced an unnecessary call-in policy resulting in her termination. As Plaintiff's position is that she provided clear notice of her need for FMLA leave on February 18 and 19, 2010, she contends that she need not provide additional notice by calling in on those days in accordance with the call-in policy. Plaintiff states that under the FMLA, notice need only be given one time. [ECF No. 60, at 10]. *See* 29 CFR 825.302(a) ("Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time[.]"). Therefore, according to Plaintiff, Defendant placed a more stringent request upon Plaintiff than the FMLA allowed.

Defendant contends that it rightfully and lawfully required Plaintiff to call in on February 18 and 19, 2010, to report her absences while on FMLA leave. Defendant avers that True's call-in policy, as applied in this case, complied with the FMLA regulations. [ECF No. 77, at 3]. The only requirements under the FMLA, according to Defendant, is that the call-in policy be the employer's "usual and customary notice and procedural requirements," that there are no "unusual circumstances," and that the employer's policy not require notice to be given sooner than otherwise required by the FMLA. [ECF No. 77, at 4]; *See* 29 C.F.R. §§825.302(d), 825.303(d).[21]

---

[21]When the need for leave is foreseeable, "An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. . . .Where an employee does not comply with the

Plaintiff argues that, although Defendant cites this regulation as authority for its right to enforce its call-in requirements, §825.302(d) does not go that far. [ECF No. 77, at 7 n.6]. Plaintiff states that §825.302(d) clearly refers only to procedures for "requesting leave." *Id. See* 29 C.F.R. §825.302(d) ("An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.").

While the Court agrees that an employee need only give notice one time in compliance with 29 C.F.R. § 825.302(a), it also recognizes that an employer may terminate an employee on FMLA leave if she fails to comply with the employer's call-in requirements. *See Bacon*, 550 F.3d at 715. In *Bacon*, the Eighth Circuit held that the FMLA permits the employer to require employees to report periodically on their status. *Id.* As noted above by Defendant, under 29 C.F.R. § 825.302(d), an employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. Employer rules and attendance policy constitute "usual and customary requirements." *See Lewis v. Holsum of Fort Wayne, Inc.,* 278 F.3d 706, 710 (7th Cir. 2002).

Here, the Court cannot say, as a matter of law, that Defendant's policy, requiring Plaintiff to call in her absence while on intermittent leave, constitutes interference. Plaintiff need not have requested FMLA leave again after February 17, 2010, but Defendant could still require her

---

employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA - protected leave may be delayed or denied. However, FMLA–protected leave may not be delayed or denied where the employer's policy requires notice to be given sooner than set forth in paragraph (a) of this section and the employee provides timely notice as set forth in paragraph (a) of this section." 29 CFR § 825.302. When the need for leave is not foreseeable, "an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 CFR § 825.303.

to comply with the usual and customary procedural and notice requirements. Plaintiff urges that because she had given advance notice, there was no "practical reason" for her to call in. [ECF No. 81, at 3]. Plaintiff argues that her advance notification of her future absences (on the 19th and 22nd), distinguishes her from Eighth Circuit precedent, such as *Bacon,* cited by Defendant. *Id.* at 5. As authority for her proposition, Plaintiff cites to *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847 (8th Cir. 2002). Plaintiff claims in *Spangler*, there was a question of fact whether or not the employee had provided advance notice of an absence, precluding summary judgment. [ECF No. 81, at 6]. However, Plaintiff misstates the *Spangler* court's holding. The Eighth Circuit reversal of summary judgment in *Spangler* turned upon whether the employee had provided sufficient notice to her employer of her need for FMLA leave, based upon her statement that she needed time off for 'depression again." *Spangler*, 278 F.3d at 852. In the absence of authority for Plaintiff's argument that under the FMLA, she could not be required to call in her absence according to the employer's policy when she had given advance notice, the Court cannot as a matter of law, agree that Plaintiff is entitled to summary judgment on this issue.[22]

Plaintiff has not established the absence of a genuine issue of material fact as to whether she was denied a substantial right under the FMLA. Thus, Plaintiff is not entitled to summary judgment on her Count I claim of interference under the FMLA.

### 2. Defendant's Motion for Summary Judgment on Count I

---

[22]In making the argument that imposition of Defendant's call-in policy did not serve a *practical purpose*, Plaintiff rejects Defendant's contentions regarding the policy's necessity to True's attendance tracking system given the number of employees. The Court, while questioning the materiality of this factual dispute to summary judgment, finds that it is nevertheless an issue for the factfinder.

Defendant argues that is entitled to judgment as a matter of law on Count I because True's conditional granting of Plaintiff's FMLA leave, subject to its uniformly enforced reporting procedures for "intermittent" FMLA leave, complied in all respects with the FMLA. [ECF No. 65]. First, Defendant maintains that it was a reasonable and lawful exercise of True's business judgment, based on all of the information known to Defendant at the time, to treat her upcoming leave as intermittent in nature. *Id*. at 2. Furthermore, Defendant states that it designated her leave on this basis not only to protect the two upcoming absences, which were admittedly known to True, but also to cover Plaintiff for any future intermittent absences caused by doctor's appointments, flare ups, or counseling sessions. *Id.* As noted earlier, Defendant contends that, based on the January Certification of Health Care Provider form completed by Nurse Perkins, indicating that Plaintiff would miss work for follow-up treatment and episodic flare-ups, Defendant anticipated future intermittent absences. *Id.* As enumerated *supra*, Defendant alleges that Plaintiff gave a variety of explanations for her absences in January and February. In order to protect her two known upcoming absences [February 19, and 22], and to cover Plaintiff for any future intermittent absences, Defendant alleges that it designated Plaintiff's leave for the time period from February 4[23] through February 22, as intermittent in nature. [ECF No. 65. at 7]. Defendant also notes that it sought *recertification* of Plaintiff's need for leave at the February 18th meeting with Plaintiff, based on the discrepancies between Plaintiff's continuing absences, the reasons she had been giving, and the future intermittent absences noted on the [January] Certification form. [ECF No. 65, at 9 n.4]. Defendant also cites to the testimony of Nurse Perkins as support for its designation of Plaintiff's leave as intermittent. [ECF No. 65, at 20].

---

[23]Defendant explains that Plaintiff was not granted FMLA leave for February 3, 2010, as she did not call in that day to report her absence.

During her deposition, Defendant states that Perkins testified that she expected Plaintiff to miss work in the future on an intermittent basis. [ECF No. 62-27, at 10-14]. Defendant emphasizes that the distinction between intermittent and single block of time FMLA leave is of no consequence to Plaintiff as the absences, however they were nominally characterized, would be protected by the FMLA without penalty to Plaintiff. [ECF No. 65, at 22].

Plaintiff argues that she, as well as Dr. Knapp, gave notice to Defendant that she would be absent through February 22, 2010, due to a serious medical condition. [ECF No. 76, at 3]. Plaintiff further states that, under 29 C.F.R. § 825.301, the "employer's decision to designate leave . . . must be based only on information received from the employee[.]" Therefore, Plaintiff contends that Defendant should not have been permitted to ignore her and Dr. Knapp, and transform a "single block of time" into "intermittent" leave. [ECF No. 76, at 3-4]. Plaintiff disputes Defendant's assertion that it classified her leave as intermittent to protect her anticipated future absences. *Id*. Plaintiff emphasizes that intermittent leave after February 23, 2010, was only a *possibility* dependent upon review of certification forms not expected until March 4, 2010. *Id.*

Viewing facts in a light most favorable to Plaintiff, it is reasonable to infer that Plaintiff's leave could be properly classified as a single bock of time. First, the Esse Health Work Release form completed by Dr. Knapp and Nurse Perkins on February 11, 2010, indicated that Plaintiff would be unable to work for a block of time from February 3, through February 22, 2010. Furthermore, Plaintiff had just been on leave in January, and although the forms relating to that time period indicate a variety of symptoms, Defendant did speak with Nurse Perkins on January 29, 2010, who confirmed to Defendant that Plaintiff was suffering from depression, and wanted FMLA leave (in January) for this reason. Additionally, Plaintiff conveyed to Defendant on

February 1, 2010, the day she was supposed to return to work, that she needed to continue her FMLA leave. Given these facts, it is logical to assume Plaintiff would be suffering from the same condition - depression. Further, it would be reasonable to infer that Plaintiff was entitled to the same type of leave she received in January, a single block of time, as, similar to Plaintiff's leave in January, in which her health care providers stated she needed to be off from January 26, through January 31, her February 11 Esse Work Release form, indicated that she would be off work through a known terminal date of February 22, 2010. As there is a genuine issue of fact concerning Defendant's alleged improper designation of Plaintiff's leave as intermittent, Defendant is not entitled to summary judgment on Plaintiff's claim that Defendant violated the FMLA by unilaterally designating her leave as intermittent.[24]

Defendant also argues that application of its daily call-in policy did not interfere with Plaintiff's FMLA rights. [ECF No. 65, at 13]. Defendant argues that its right to enforce this policy as to FMLA-qualifying absences is supported by ample federal case law, including binding Eight Circuit precedent in *Bacon*.[25] In *Bacon*, Defendant claims that a terminated

---

[24]Even though there is a genuine factual dispute as to the designation of Plaintiff's leave, here, the Court must also consider whether it is predicated on the existence of a legal theory that is viable under the FMLA. As discussed earlier, Plaintiff's argument under *Xin Liu* is not instructive. *See* Footnote 16, *supra*. Designating leave as intermittent, particularly as in Plaintiff's situation, where a health provider has specified a definite period of time that the employee must be off work and unavailable to the employer, could arguably put a burden on that employee to call in daily and come in to work to fill out forms. An employee can prevail under an interference theory if he was denied substantial rights under the FMLA for a reason connected with his FMLA leave. *Throneberry*, 403 F.3d at 979. The Court cannot say that the designation of Plaintiff's leave as intermittent, subjecting her to the call-in policy, and leading to her termination, was insufficiently related to her FMLA leave as a matter of law.

[25]Note that Plaintiff challenges Defendant's reliance on *Bacon*, and other Eighth Circuit precedent, as the cases do not involve a situation where the employer conceded it had advance notice of employee's absence. [ECF No. 76, at 10]. As discussed in Plaintiff's Motion for Summary Judgment, however, Plaintiff does not cite an authoritative case which holds that an employer may not enforce its usual and customary call-in policy just because it had been given

employee did not state an interference claim under the FMLA because she "was terminated for failing to comply with [the employer']s call-in policy, and she would have been terminated for doing so irrespective of whether these absences were related to FMLA leave." [ECF No. 65, at 14, quoting *Bacon*, 550 F.3d at 714].[26]   Defendant argues that the uniform call-in policy is necessary as it is impracticable for Defendant to separately track the daily schedules of each of its employees on intermittent leave, and to make singular exceptions for individual employees on a case by case basis. [ECF Nos. 65, at 8; 71, at 20].  Defendant asserts, as it did in its response to Plaintiff's Motion for Summary Judgment [ECF No. 77, at 4], that under 29 C.F.R. §825.302(d), "An employer may require an employee to comply with the employer's ***usual and customary notice and procedural requirements*** for requesting leave, absent unusual circumstances." Defendant adds that Plaintiff was aware of her duty to call in on those days, as she was reminded of this at the February 18th meeting, and Erin Turner had placed an asterisk next to the paragraph of the FMLA form that informed Plaintiff of her need to call in daily on intermittent leave. [ECF No. 65, at 10].

Plaintiff argues that the existence of a universally-enforced[27] attendance policy requiring employees to call in daily to report absences applicable to Plaintiff's situation is contradicted by True's own documents and admissions. [ECF No. 76, at 6].  Although Defendant's Human Resources Supervisor, Mary Gregory, stated in her affidavit that every time an employee was

_____

advance notice of an absence.

[26]In further support of this proposition, Defendant cites to other federal cases, Plaintiff's litigation through the Missouri unemployment appeals process, and a Department of Labor Opinion letter as persuasive authority.  [ECF No. 65, at 15-19].

[27]Defendant disputes that it "universally" enforces its policy as stated by Plaintiff, and instead notes that it "uniformly" enforces the policy with respect to all employees, *except* those of FMLA leave for a single block of time.  [ECF No. 80, at 14-15].

absent two days in a row without calling in, that employee was discharged, Plaintiff disputes the accuracy of this statement based on her own 2005 FMLA leave.  [ECF No. 76, at 6].   Plaintiff claims that in 2005, when she was on intermittent FMLA leave and absent for more than two weeks in a row, she was **not** required to call in.  [ECF No. 76, at 5-6].  Specifically, Plaintiff contends the following:

> On April 27, 2005 Deborah Hagler signed FMLA papers and she was considered to be on intermittent FMLA leave April 11, 2005 and "consecutive intermittent leave of absence" beginning April 28, 2005 to care for her mother; her return to work date was not known as of April 27, 2005.  It was noted that she would need to continue the FMLA leave intermittently after she returns to work.  She was absent on FMLA leave Thursday and Friday, April 28 and 29 and the entire week of Monday May 2 through Friday, May 6, 2005.  She did not call in any of the days April 28 through May 6, 2005, but she was not fired.  On Monday, May 9, 2005 Plaintiff Hagler called Defendant to "check in" and explain she would return to work the next day.  She added, however, that she would need to take FMLA leave intermittently beginning May 12, 2005 to take care of her mother.  And, according to the attendance record, Plaintiff Hagler was absent Thursday, May 12 and Friday May 13, 2005.  She did not call in on either of those days, and she was not fired.  She was absent on FMLA intermittent leave from Monday, May 16 through Tuesday, May 31, 2005; but she was not fired even though she did not call in any one of those twelve days.

 [ECF No. 71, at 3-4]; *See* Plaintiff's attendance record, produced by Defendant at ECF No 62-5, at 4-5].

Defendant argues that Plaintiff mischaracterizes her 2005 FMLA leave to care for her mother as intermittent.  [ECF No. 80, at 15].  According to Defendant, the evidence shows that True characterized the 2005 leave as being for a continuous single block of time, bringing it within the one exception to the daily call-in requirement   *Id.*  Defendant further maintains that the Factory Request for Leave of Absence Form for Plaintiff's 2005 leave, refers to leave both "in a single block of time" and "intermittently."  *Id. See* ECF No. 60-7.   Defendant states that this form refers to leave starting April 11, 2005, as intermittent, and also states "consecutive April 28, 2005 – return to work date unknown."  *Id.*  Consistent with this, Defendant argues that True's Attendance Report for Plaintiff states "LOA [Leave of Absence] will be intermittent effective 4/11/05 . . . ***Consecutive*** LOA will begin 4/28/05. . . ."  *Id.*; *See* ECF No. 62-5, at 4.

Upon review of Plaintiff's 2005 Factory Request for leave form [ECF No. 60-7], both the "intermittent" and "single block of time" boxes were checked, indicating the type of leave needed by Plaintiff.  It does appear that consecutive leave was planned on April 28, 2005, while Plaintiff's absence on April 11, 2005, was deemed intermittent.  The Attendance Report [ECF No. 62-5] confirms that Plaintiff's April 11, 2005 absence was determined to be intermittent. The Report also indicates that "consecutive LOA will begin 4/28/05 to care for [Plaintiff's] mother."  It states that Plaintiff "may also need to continue LOA intermittently after she returns to work."   On May 9, 2005, the Attendance Report states that Plaintiff called to check in, and that she would return to work tomorrow [May 10].  Then it indicates that Plaintiff will have to go 'back out on 5/12 and may be able to [return to work] intermittently after that . . ."  The Report shows that Plaintiff missed work from May 2 – May 6, and May 12 – May 31, without calling in. The Court finds it ambiguous as to whether these absences were deemed intermittent or a single

block.[28]  Notably, the form states that the return to work date is unknown, which would seem to support classification as intermittent, although Defendant maintains that single block leave does not need a specified end-date.  Further, Plaintiff alleges that when she called in on May 9, she told Defendant she would need to take leave *intermittently* beginning May 12.  Also, Plaintiff, when discussing her 2005 leave, refers to her leave beginning April 28, 2005, as a "*consecutive intermittent* leave of absence."  Viewing all the evidence regarding Plaintiff's 2005 leave in a light most favorable to Plaintiff, the 2005 leave could be construed as intermittent, and Plaintiff indisputably did not call-in her absences while on that leave, nor was she terminated for her failure to call in, according to Defendant's two day call-in rule.

Viewing the evidence in a light most favorable to Plaintiff, the classification of her 2005 leave creates a genuine issue of material fact as to the consistency with which Defendant applied their call-in policy for those on intermittent leave.  The evidence shows that there is a dispute as to whether Plaintiff's leave during 2005 was designated as a "single block of time" leave or intermittent.  As such Defendant cannot establish the absence of a genuine issue of fact as to its lawful termination of Plaintiff, while on FMLA leave, and Defendant's Motion for Summary Judgment as to Count I must be denied.

### C.  FMLA Retaliation Claim - Defendant's Motion for Summary Judgment

Defendant also seeks summary judgment on Count II of the First Amended Complaint, which alleges that Defendant terminated her employment in retaliation for her attempting to exercise her rights under the FMLA.  Absent direct evidence, Plaintiff's FMLA retaliation claim is evaluated under the *McDonnell Douglas* burden-shifting framework.  *Chappell v. Bilco Co.*

---

[28]The Attendance Report refers to "consecutive" leave.  Plaintiff uses the term "consecutive intermittent leave," while to Defendant, consecutive is interpreted a single block of time.

675 F.3d 1110, 1116 -1117 (8th Cir. 2012) (citing *Wierman v. Casey's Gen'l Stores*, 638 F.3d 984, 999 (8th Cir. 2011)). To establish a prima facie case, Plaintiff must show that 1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct. *Id.* at 1117. If Plaintiff establishes a prima facie case, the burden shifts to Defendant to "promulgate a non-discriminatory, legitimate justification for its conduct," and then back to Plaintiff, to "either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce additional evidence proving actual discrimination." *Id*. (citing *Sprenger v. Fed. Home Loan Bank of Des Moines,* 253 F.3d 1106, 1111 (8th Cir.2001)).

In support of its Motion for Summary Judgment, Defendant argues that it is entitled to judgment as a matter of law on Count II because it terminated Plaintiff's employment for the legitimate reason that she violated True's uniformly-enforced attendance policy requiring employees to call in daily to report absences, and Plaintiff cannot show this reason was a pretext for FMLA retaliation. [ECF No. 65, at 2]. Defendant contends that application of its daily call-in policy did not constitute FMLA retaliation. [ECF NO. 65, at 13]. Defendant states that:

> It is undisputed that: (1) True uniformly requires employees to call in absences daily, unless on FMLA leave for a single block of time, with failure to do so for two consecutive working days resulting in termination for job abandonment; (2) Hagler knew she was required to call in daily, and was specifically reminded of this requirement on February 18, both verbally and in writing; (3) Hagler failed to call in two consecutive absences, on February 19 and 22; and (4) True terminated Hagler's employment for this rule violation. Under these circumstances, Hagler's termination is not unlawful . . . retaliation for her exercise of those rights.

[ECF No. 65, at 13]. As discussed at length above, Defendant maintains that enforcement of its call-in policy comports with the FMLA, as, "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. §825.302(d).

Assuming Plaintiff has established a prima facie case with respect to her termination, and that Defendant has articulated a legitimate reason for its action, "the burden shifts back to the plaintiff to identify evidence sufficient to create a genuine issue of material fact whether [the employer's] proffered explanation is merely a pretext for unlawful retaliation." *Chappel*, 675 F.3d at 1117 (quoting *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 934 (8th Cir. 2011)). As discussed above, there is a genuine issue of material fact as to whether Defendant uniformly enforced its call-in policy with regard to employees on intermittent leave. This issue was deemed sufficient to defeat summary judgment for Defendant on Plaintiff's interference claim, and likewise, it is also sufficient to create a genuine issue of fact as to whether Defendant's alleged legitimate justification for Plaintiff's termination is pretextual.[29] As such, Defendant's Motion for Summary Judgment as to Count II will be denied.

## IV. CONCLUSION

For the reasons stated herein, the Court will deny Plaintiff's Motion for Partial Summary Judgment [ECF No. 59] as to Defendant's liability on a limited theory of Count I. The Court will also deny Defendant's Motion for Summary Judgment [ECF No. 61] on Counts I and II of the Complaint.

---

[29]The Court also notes that Defendant does not dispute that it modified the Factory Request for FMLA form *specifically* for Plaintiff on February 17, 2010, immediately prior to the February 18, 2010 meeting in which Plaintiff signed this form, to include language pertaining to the call-in policy's applicability to intermittent leave.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment [ECF No. 59] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 61] is **DENIED**.

Dated this ___26th___ day of June, 2013.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE